CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
REBECCA HARRIS (Bar No. 340964)
(E-Mail: Rebecca_Harris@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JUAN CHRISTOBAL IBARRA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUAN CHRISTOBAL IBARRA,<br><br>    Defendant. | Case No. 2:25-cr-00209-AH-2<br><br>**DEFENDANT JUAN CHRISTOBAL IBARRA'S OPPOSITION TO GOVERNMENT'S *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER** |

Defendant Juan Christobal Ibarra, by and through his attorney of record, Deputy Federal Public Defender Rebecca Harris, hereby files this opposition to the government's *ex parte* application for a protective order.

                                          Respectfully submitted,

                                          CUAUHTEMOC ORTEGA
                                          Federal Public Defender

DATED: July 21, 2025            By  */s/ Rebecca Harris*
                                          REBECCA HARRIS
                                          Deputy Federal Public Defender
                                          Attorney for JUAN CHRISTOBAL IBARRA

# MEMORANDUM OF POINTS AND AUTHORITIES

# I. ARGUMENT

The defense does not object to a protective order here generally. It does, however, object to several of the specific terms contained in the government's proposed protective order. Accordingly, the defense respectfully requests that the Court modify the government's proposed protective order in accordance with the objections listed below.

**A.     "Confidential Information" should Only Refer to Information Contained Within Documents, and not the Documents Themselves.**

Confidential information should, as the name suggests, only refer to information. Under the government's definition, "confidential information" refers to "any *document* or information containing CI Materials or PII materials that the government produces to the defense. (ECF 23-1 at 4) (emphasis added). But expanding the definition to include entire documents—not just sensitive information contained within those documents—is impracticable. Defendants and witnesses often like to take notes. Thus, if the defendant or a witness wanted to take notes on a document deemed to be confidential information, the person could not take *any* notes about that document, even if the information they sought to take notes on did not implicate any privacy interests. Thus, if the defendant or a witness wanted to take notes on a document deemed to be confidential information, the person could not take *any* notes about that document, even if the information they sought to take notes on did not implicate any privacy interests. For example, if a defendant or witness wanted to take notes about how they are accused of being at a specific location at a specific time, they could not do so, even though this type of information does not implicate any privacy interests. That said, if a defendant or witness wanted to take notes about another person's name or identifying information, the protective order would prevent them from doing so, because that is the type of confidential information appropriately covered by the definition.

B. **The Government Should not be Permitted to Redact "PII" from Confidential Information Produced Pursuant to the Protective Order.**

The government seeks the authority to redact materials produced under the protective order. (ECF 23-1 at 4 ("The government may also redact any PII contained in the production of Confidential Information")). But the entire purpose of this protective order is to allow the defense to receive discovery unredacted because the government claims redaction is not practicable. (See ECF 23 at 9) ("PII makes up a significant part of the discovery in this case and such information, in many instances, has evidentiary value. If the government were to attempt to redact all of this information . . . the defense would receive a set of discovery that would be highly confusing and difficult to understand, and it would be challenging for defense counsel to adequately evaluate the case, provide advice to the defendants, or prepare for trial.")). Moreover, the terms of the order itself prevent the defense from disseminating any information covered by the protective order. Thus, the government's need to redact information already subject to a protective order makes little sense.

C. **Preventing Other Members of the Defense Team From Reviewing "CI Materials" with Witnesses is Unnecessary and Unfairly Onerous.**

The government's protective order provides that "defense counsel must be present whenever any CI Materials are being shown to a witness or potential witness" (ECF 23-1 at 6). However, "defense counsel" should be changed to "defense team." The government's chosen phrasing imposes an unnecessary and onerous burden on the defense. There is no reason why other members of the defense team, who work under the direction of defense counsel, should not be able to review all discovery with witnesses. The government claims allowing members of the defense team to review CI information with witnesses "would increase the risk of unauthorized dissemination of CI materials." (ECF 23 at 13). But the government has offered no justification for its apparent distrust of the employees at the Federal Public Defender's Office, who are federal employees just like members of the United States Attorney's Office. Defense

3

counsel should be able to utilize her paralegals and investigators to help her efficiently and effectively represent Mr. Ibarra. Moreover, the government's order allows the "defense team" to review PII with a witness or potential witness. (*See* ECF 23-1 at 6). Thus, it is unclear why members of the defense team should be unable to review CI materials with witnesses.

## D. Requiring Witnesses to Agree to the Protective Order in Writing Would Prejudice Mr. Ibarra's Ability to Put on a Defense.

The government's proposed protective order requires that any witness or potential witness to whom the defense seeks to show protected information must first agree *in writing* to be bound by the terms of the protective order. (ECF 23-1 at 6). The defense objects to the "in writing" portion of the proposed protective order because such a requirement restricts the defense's ability to investigate, and therefore its ability to provide effective representation in this case.

The Supreme Court has recognized that rules that risk chilling the defense's ability to present witnesses should not be allowed. *See James v. Illinois*, 493 U.S. 307, 314–15 (1990) (declining to apply the impeachment exception to the exclusionary rule to defense witnesses because doing so "likely would chill some defendants from presenting their best defense and sometimes any defense at all—through the testimony of others"). As a practical matter, witnesses are often hesitant to get involved in federal criminal cases at all. Unlike the government's agents, the defense team does not have the persuasive authority of a law enforcement badge. Witnesses may refuse to be bound in writing to a protective order because signing a document may be intimidating or because they are hostile towards defense attorneys. *Cf. id.* (noting that "defendants sometimes need to call 'reluctant' or 'hostile' witnesses to provide reliable and probative exculpatory testimony").

The "in-writing" requirement is also unnecessary here. The government's concerns regarding the safety and security of confidential information can be met by requiring the defense team to secure a verbal agreement to the terms of the protective

order from potential witnesses. The defense can provide adequate notice to witnesses or potential witnesses by advising them of the terms of the protective order and ensuring that they agree to be bound by those requirements before showing them such information, just as it does for other members of the defense team. Although the government argues that the "in-writing" requirement is necessary to impress upon a witness the importance of abiding by the terms of a protective order, it is unclear how a signature would increase a witness's understanding more than an oral admonition would. The protective order is a seven-page document containing legalese and references to statutes that the majority of the public is unaware of, let alone trained to interpret. If anything, an oral admonition by a defense team member who understands the obligations and can explain those obligations in plain English is equally, if not more, effective.

For these reasons, judges in our district have removed the "in writing" provision. For example, Judge Gee agreed with the defense and refused to include this provision in a protective order. *See United States v. Albertson*, CR 18-712-DMG, ECF No. 24 (refusing to include the "in writing" requirement in the protective order). Judge Kronstadt also agreed with the defense and refused to include this provision in a protective order. *See United States v. Cisneros*, CR 18-875-JAK, ECF Nos. 19, 22 (granting protective order on the terms requested by defense counsel). Judge Phillips also agreed with the defense and refused to include this provision in a protective order. *See United States v. Barrow*, CR 20-563-VAP ECF Nos. 38, 40, 42 (granting protective order on the terms requested by defense counsel). Judge Olguin has agreed with the defense and refused to include the "in writing" provision in a protective order. *See United States v. Ellis-Strong*, No. CR 20-486-FMO-1, ECF Nos. 74, 75 (granting order on the terms requested by defense counsel). Furthermore, Judge Frimpong recently agreed with the defense and refused to include this provision in a protective order governing discovery production in a multi-defendant drug trafficking case. *See United*

*States v. Calderon*, CR 24-167-MEMF-7, ECF Nos. 57, 77, 84, 86 (sustaining the defense's objection to the "in writing" requirement).

Though the government contends that the "in-writing" requirement is necessary to hold witnesses in contempt, if the government is actually serious about holding witnesses in contempt, it need only show notice of the order, not a particular type of notice or a written acknowledgement. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). Moreover, the fact that the government does not require itself to obtain the signatures of its own potential witnesses before showing them confidential information belies the government's own argument. It defies logic that an "in-writing" requirement is needed to hold defense witnesses in contempt, but no such requirement is needed to hold government witnesses in contempt.

In addition, this "in writing' requirement should be eliminated because it is one-sided. There is no similar provision that requires the government or its agents to have its witnesses agree to the terms of the protective order in writing. If the government's goal is to ensure that all witnesses grasp their obligations, then the government should also require its witnesses to sign the protective order. Without a mutually binding obligation, this provision is ineffective and unnecessary. If a written commitment is truly required to make the protective order effective, then the same commitment should be required when the government shows confidential information to witnesses.

The government justifies the one-sided "in writing" requirement by reminding the Court that prosecutors "represent the interest of society as a whole," while defense attorneys represent the "undivided interests of his [or her] client[s]." (ECF No. 16 at 7) (for the first quote, citing *Ferri v. Ackerman*, 444 U.S. 193, 202–203 (1979); for the second quote, citing *id.* at 204)). According to the government, this is relevant to the "in writing requirement" because prosecutors have "an inherent duty to protect the interests of the victims and witnesses in this case," while "if defense counsel believes that an action may harm the interests of the witnesses or victims -- but help his client --

then (within ethical bounds) defense counsel likely would be compelled to take it." (ECF No. 16 at 7). This argument misses the point. Under the protective order proposed by the defense, defense counsel would be acting *outside of ethical bounds* if she showed confidential information to witnesses without advising them of the protective order's terms. There is no need to layer an "in writing" requirement on top of defense counsel's already existing ethical imperative to follow the Court's orders.

The government claims that without the "in writing requirement," it would be impossible for the government to enforce the protective order, because there would be no written record of it. (ECF 23 at 16). But courts in this district have regularly eliminated the "in writing" requirement and instead required the defense team to keep a log of witnesses who agreed to be bound by the protective order. *See, e.g., United States v. Triefenbach*, No. 21-cr-00133-JVS, ECF No. 31 at ¶ 4(k) (C.D. Cal. Dec. 13, 2021) (eliminating the "in writing" requirement for CI Materials in a gun and drug case); *United States v. Calvin*, No. 22-cr-00134-JLS, ECF No. 26 at ¶ 6(l) (C.D. Cal. Jun. 6, 2022) (rejecting "in writing" requirement for CI Materials and directing the defense to keep a log of witnesses who agreed to be bound by the protective order in a drug case); *United States v. Walsh*, No. 21-cr-00068-SB, ECF No. 28 at ¶ 4(k) (C.D. Cal. Mar. 29, 2021) (eliminating the "in writing" requirement for PII in gun case and directing defense to keep a log of witnesses who agreed to be bound by the protective order). The Court should modify the protective order here in the same fashion.

**E.     The Defense Should Be Permitted to Retain Confidential Materials in Accordance with the California Business and Professions Code and the Rules of Professional Conduct.**

The government's protective order imposes different obligations with respect to the retention of protected discovery, depending on whether it contains PII or CI materials. For discovery containing PII materials, the defense has three options: "return all PII materials [to the government], certify that such materials have been destroyed, or certify that such materials are being kept pursuant to the California Business and

Professions Code and the California Rules of Professional Conduct," (ECF 23-1 at 8). However, for discovery containing CI materials, the defense has fewer options. The defense must either "return CI materials to the government or certify that such materials have been destroyed." (*Id*.).

For CI materials, the defense should similarly have the third option of certifying "that such materials are being kept pursuant to the California Business and Professions Code and the California Rules of Professional Conduct." (*Id*.). This is because litigation in criminal cases can sometimes arise long after what might normally be considered the "conclusion of appellate and post-conviction proceedings." (*Id*.). For example, the First Step Act and the Fair Sentencing Act have required full-scale review of thousands of cases. In reviewing any case, it is crucial to be able to review the entire file, including information subject to a protective order. If discovery is missing from that file, it creates obvious complications going forward.

The California State Bar Formal Opinion 2001-157, interpreting Rules 3-700 and 4-100 of the Rules of Professional Conduct of the State Bar of California, and California Business and Professions Code §§ 6068(e), directs that "client files in criminal matters should not be destroyed without the former client's express consent when the former client is alive." Moreover, the government's assertion that defense counsel retaining CI Materials pursuant to the California Business and Professions Code and the California Rules of Professional Conduct risks confidential informants' lives should be given little weight. (*See* ECF 23 at 19). The information would not be publicly accessible and would be maintained by fellow federal employees. Given that defense counsel is bound to secure the records in her possession, the government offers no compelling reason to require defense counsel to take the ethically questionable step of destroying portions of the case file, in contravention of the State Bar's opinion.

//

//

//

## II. CONCLUSION

For the foregoing reasons, Mr. Ibarra respectfully requests that the Court modify the proposed protective order consistent with the objections raised by the defense.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 21, 2025         By  */s/ Rebecca Harris*
                                  REBECCA HARRIS
                                  Deputy Federal Public Defender
                                  Attorney for JUAN CHRISTOBAL IBARRA